# United States District Court
## for the
### Eastern District of Virginia
### Richmond Division

Case No. 3:23cv206

___Nehemiah Surratt___
*Plaintiff*

Jury Trial: ☐ Yes ☑ No

___Ivolyn Brown___
*Defendant*

## COMPLAINT FOR A CIVIL CASE

I.  **The Parties to This Complaint**

   **A. The Plaintilff**

   1. The plaintiff's name is Nehemiah Surratt.

   2. The legal address of the plaintiff is 1817 Clover Field Lane Manakin-Sabot, VA 23103.

   3. The plaintiff's telephone number is (757) 914-0794.

1

4. The plaintiff's e-mail address is nsurratt37@gmail.com.

**B. The Defendant**

1. The defendant's name is Ivolyn Brown.

2. The legal address of the defendant is 131 East 21st Street, Apt 5F Brooklyn, NY 11226.

3. The defendant's telephone number is (718) 415-4492.

**II. Basis for Jurisdiction**

1. The basis for federal court jurisdiction is diversity of citizenship of the parties.

2. The Plaintiff

    a. The plaintiff is an individual.

    b. The plaintiff, Nehemiah Surratt, is a citizen of the State of Virginia.

3. The Defendant

    a. The defendant is an individual.

    b. The defendant, Ivolyn Brown, is a citizen of the State of New York.

    c. The attorney for the defendant is Ernest Wilson.

    d. The address of the defendant's attorney is 111 Court Street, Suite 2L Brooklyn, NY 11201.

    e. The telephone number for the defendant's attorney is (718) 826-3062.

4. The Amount in Controversy

The amount in controversy is $565,000, not counting interest and costs of court. The plaintiff claims that the defendant owes this amount because of the defendant's actions on the night of January 23, 2009, during which the defendant pressed false charges against the plaintiff and caused him to be arrested on false pretenses. The defendant's actions on this night prevented the plaintiff from being gainfully employed and being unable to earn a suitable amount of income for himself.

### III. Statement of Claim

1. The plaintiff is suing the defendant for harassment, menacing, assault, slander, filing a false police report, and loss of wages.

2. On the night of January 23rd, 2009 the plaintiff got off work at 7:00p.m. from his job as a tutor in the SEEK Department at Hunter College, CUNY, the school he was attending as an undergraduate.

3. The plaintiff took the 2 train to the stop at the Church Street station in Brooklyn and then took the bus from this subway station to the bus stop at the corner of Flatbush Avenue and Church Avenue.

4. When the plaintiff got off the bus at the aforementioned stop, the plaintiff saw that there was a crowd of people on the sidewalk, that there were cars parked by the sidewalk, and that the street was full of cars.

5. The plaintiff also noticed the defendant and a woman who was accompanying the defendant. The defendant is about 5ft. 10in. tall and her friend or accomplice is about 6ft. 3in. tall.

6. Since the plaintiff noticed that the sidewalk was so crowded, as politely as he could, he said "Excuse me, can I get by you?" so he could proceed to his apartment building which was only a few blocks away. The plaintiff was talking to both the defendant and the person accompanying the defendant.

7. The defendant and her friend refused to move, so the plaintiff forced his way past the two women. The two women then pushed the plaintiff, whereupon he almost fell to the ground and he threw his umbrella into the street in a fit of anger.

8. These two women also called the plaintiff a "faggot" and threatened to have the plaintiff beat up and killed.

9. The plaintiff responded to the two women by saying that they were a waste of his time and he proceeded to the corner of Ocean Avenue and Church Avenue to get to his apartment.

10. One block away, at the corner of Ocean Avenue and Church Avenue, there were about twenty police officers standing there, patrolling the neighborhood. These officers saw that the plaintiff had thrown his umbrella into the street, so they began to question the plaintiff about why he threw his umbrella into the street.

3

11. The defendant and her friend noticed that the police were questioning the plaintiff so the two women took this moment as an opportunity to provide the police with a deluge of lies about the plaintiff and about what happened when the plaintiff encountered them, by claiming that the plaintiff hit the defendant on the head with his umbrella for no reason, and so the police officers on the scene decided to arrest the plaintiff.

12. The defendant and her friend both lied to the police about the plaintiff's conduct toward the defendant and her friend on the date of the plaintiff's arrest.

13. The defendant and her friend were, and still are, complete strangers to the plaintiff. As far as the plaintiff was concerned, these two women were just two random persons who happened to be in the plaintiff's way when he got off the bus at the bus stop to get to his apartment.

14. The plaintiff has not had any contact whatsoever with the defendant or her friend nor does he want to.

15. With the false information that the defendant and her accomplice gave the police, the police decided to arrest the plaintiff. Prior to this arrest, the plaintiff had never been arrested and had never been in trouble with the law ever. The plaintiff was in his senior year as an undergraduate student at Hunter College, CUNY at the time of the arrest.

16. The defendant also never showed up in court to testify against the plaintiff in the criminal trial against the plaintiff in Brooklyn Criminal Court.

17. The defendant claimed that the plaintiff hit her up the side of the head with an umbrella and that she subsequently had to seek medical attention at the hospital. However, when the plaintiff sued the defendant in the Civil Court of the City of New York in 2010 and then in the State Supreme Court in Brooklyn, NY in 2014 or thereabouts, she failed to provide any evidence that she was assaulted or that she ever received any medical treatment at all as a result of the plaintiff's encounter with her.

18. The case in the Civil Court of the City of New York was discontinued due to the fact that the judge found that neither the defendant nor the plaintiff had enough evidence to proceed in court.

19. The plaintiff subsequently sued the defendant in the State Supreme Court in Brooklyn, NY.

20. When the plaintiff sued the defendant in the State Supreme Court, she failed to file an answer in response to the plaintiff's summons and complaint in the

time required according to Rule 3215 of the Civil Practice Law and Rules of the state of New York. The summons and complaint were duly served on the defendant.

21. As a result of the defendant's failure to file an answer in response to the plaintiff's summons and complaint, the plaintiff filed a motion for the entry of a default judgment against the defendant in accordance with Rule 3215 of the Civil Practice Law and Rules of the state of New York.

22. However, the judge presiding over the case kept adjourning the return date for the motion for entry of default judgment against the defendant about eight or nine times for no reason and without any explanation, with the result that the plaintiff could not recover the monetary damages that he claimed and he had to leave New York City because he could no longer afford to live there. His apartment was not safe and he could not trust living as a roommate with someone, since he had no income at the time and he had bad experiences living with roommates. The case the plaintiff filed in the State Supreme Court in Brooklyn was consequently terminated.

23. At the conclusion of the criminal case against the plaintiff, the plaintiff agreed to a conditional discharge of the case. This plea deal that the District Attorney's Office offered the plaintiff involved the dismissal and sealing of the charges filed against the plaintiff if the plaintiff stayed out of any legal trouble for six months after the conclusion of the case. The plaintiff accepted this deal, interpreting it in a way that he thought it meant that he would not have a criminal record whatsoever, and he stayed out of legal trouble for the six months in question.

24. The plaintiff applied for a tutoring job with Broadnet Services, LLC, a tutoring company based in Mount Vernon, NY, exactly six months after the conclusion of the criminal case against him. In order to qualify for this tutoring job, the plaintiff had to pass a background check conducted by the Department of Education of the City of New York because of the contract that Broadnet Services had with this agency.

25. The plaintiff followed through with the background check, during which the charges filed against him appeared in the background check. As a result, the plaintiff was required to submit a written statement to the NYC Department of Education explaining the circumstances surrounding the charges.

26. After reading the plaintiff's letter, the official in charge of interviewing the plaintiff, the Hiring Manager or Director of Human Resources, sent the plaintiff a letter, stating that the plaintiff would have to explain the circumstances of his arrest in person in an interview between the plaintiff and the Hiring Manager because the plaintiff had included adverse information in the written statement he submitted to the Hiring Manager.

5

27. The plaintiff showed up to the Hiring Manager's office on the appointed date for the interview. However, as soon as the plaintiff arrived, he put the folder he was carrying on the coffee table that was next to his seat. As soon as the plaintiff did this, a man accompanied by a woman, who were both sitting across from the plaintiff, and who were both unknown to the plaintiff, began to harass and menace the plaintiff because this man was offended that the plaintiff had rested his folder on his folder which was already on the coffee table and this coffee table was sitting across from this unknown man. The plaintiff had no way of knowing that the folder belonged to this man who had previously been waiting in the waiting room.

28. When the plaintiff tried to get this man and his friend to leave him alone, they both asked the secretary at the office to call security. The plaintiff then asked the secretary if security was coming. The secretary replied that security was, in fact, coming, so the plaintiff left the building before security could arrive.

29. After this incident, the plaintiff was never able to obtain gainful employment as of the date of this complaint.

30. The defendant knows that she gave the police false information about the plaintiff because she failed to file an answer in response to the summons and complaint the plaintiff filed in the State Supreme Court in Brooklyn against the defendant after it was duly served on her. She also failed to appear in court for the criminal trial against the plaintiff to testify against him and she failed to appear in the Civil Division of the State Supreme Court in Brooklyn when the plaintiff sued her there.

## IV.    Relief

1. The plaintiff is suing the defendant for harassment, menacing, slander, filing a false police report, and loss of wages.

2. The plaintiff is seeking a total of $565,000 in damages.

3. The sum of $525,000 constitutes damages due to lost wages. The plaintiff has calculated this sum based on the hourly wage and amount of money the plaintiff would have earned had he never been arrested and had he been able to work for Broadnet Services, LLC.

4. The sum of $40,000 is for punitive damages, which the plaintiff seeks for the harassment and menacing of the plaintiff and providing false information to the police about the plaintiff.

5. The wrongs alleged are continuing at the present time because the plaintiff has no income and is still actively looking for a job. The plaintiff also owes about $130,000 in student loans which are due and payable in the full amount effective immediately.

6. In addition, the plaintiff does not have any income whatsoever for his personal maintenance except for about $500 in a bank account.

7. The plaintiff has, as a result of the defendant's actions, suffered an undue amount of emotional and financial distress as the result of the plaintiff's inability to earn a steady income.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/24/2023

Signature of Plaintiff  *Nehemiah Surratt*

Printed Name of Plaintiff  Nehemiah Surratt

Street Address  1817 Clover Field Lane

State and Zip Code  Manakin-Sabot, VA 23103

Telephone Number  (757) 914-0794

E-mail  nsurratt37@gmail.com

8